IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| NEHEMIAH PRINCE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-93 |
| | : | |
| H.D.V.I. HOLDING COMPANY D/B/A | : | |
| THE HOME DEPOT | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                    **January 25, 2021**

Plaintiff Nehemiah Prince brings this case pursuant to the Virgin Islands Wrongful

Discharge Act (WDA), 24 V.I.C. §§ 76–79, against Defendant H.D.V.I. Holding Company, d/b/a

The Home Depot (THD). THD moves for summary judgment pursuant to Federal Rule of Civil

Procedure 56 arguing Prince's claim is preempted by the National Labor Relations Act (NLRA)

because Prince was employed as a supervisor. Prince opposes the motion and contends he was not

a supervisor and even if he were, the NLRA does not preempt his claim. The question of whether

Prince's claim is preempted hinges on whether he was employed as a supervisor with THD. There

is, however, a genuine dispute of material fact as to whether Prince was a supervisor. As a result,

the Court will deny THD's motion for summary judgment.

## FACTS[1]

Prince began working at THD on St. Thomas, Virgin Islands on March 8, 2010. While

employed there, his official job title was "Department Supervisor," working at various times in the

garden, paint, hardware, and flooring departments.[2] In early 2019, Prince violated the company's

---

[1] The Court has drawn the following facts from the summary judgment record and views the facts in the light most favorable to Prince, the nonmovant. *See Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[2] At THD, the role of a department supervisor is the same as that of a department head. *See* Def.'s Ex. A, Prince Dep. 106:5–11, ECF No. 39-1.

social media policy by posting inappropriate content during his work shift and, on May 15, 2019,

THD terminated Prince from his position. *See* Ex. 1 to Prince Dep., at 11, ECF No. 39-3.

In his job description, Prince's responsibilities covered sales, customer service, stock maintenance, store safety, and appearance. He supervised associates, assisted them with their daily tasks, monitored their daily schedule, provided feedback, and helped with training. He also helped management personnel—including the human resources manager, assistant store manager (ASM), or store manager (SM)—in the hiring and performance review of associates. Prince was not, however, authorized to hire or fire employees. With respect to associate performance, Prince helped in completing performance and development summaries for hourly associates (HA Reviews) and provided a recommendation to management as to the overall rating of an associate at meetings.[3]

While Prince played a role in the performance review of associates, the ASM reviewed Prince's performance in his role as Department Supervisor. His performance reviews contained four main evaluation categories: customer service, in-stock, store appearance, and leadership. These sections were further divided into several subsections. For example, under the leadership section, there were five subsections: recognition, accountability, training and development, leadership and communication. Each subsection contained a description of additional duties and responsibilities.

One of Prince's duties involved the completion of work lists. To achieve this, either an ASM gave Prince a work list identifying specific tasks or opportunities to be completed or Prince

---

[3] Prince argues that these recommended ratings were routinely rejected. *See* Pl.'s Ex. 6, Prince Decl. ¶¶ 8–10, ECF No. 46-1.

received instructions to create his own work list by conducting a walk-through of the department.[4] Examples of these work list tasks included packing down merchandise or working on presentation. The ASM held Prince accountable for any resulting deficiencies in the tasks assigned within his department.

In imposing disciplinary action on employees, THD uses a progressive process with four levels: coaching, counseling, final warning, and termination. According to THD's "Standards of Performance," "managers maintain the discretion to escalate the discipline progression or (skip steps), depending on the nature and severity of the issue(s)." Ex. 6 to Prince's Dep., ECF. No. 39-3. The level of discipline chosen for a given incident or employee deficiency is documented in a Progressive Disciplinary Notice (Notice).

Manager's Notes (Notes), in contrast to Notices, are used to initiate the formal progressive disciplinary process. Notes record all verbal performance discussions, observations, and performance development follow-ups. They become a part of the associate's personnel record and the accumulation of three Notes could, with the approval of an ASM or SM, trigger the formal progressive disciplinary process. THD policy specifically encourages supervisors to issue Notes to associates to document associate progress or performance issues. *See id.* ("It is recommended that Managers/Supervisors use Manager Notes to document progress or continued issues following the delivery of the improvement plan.").

When taking disciplinary action taken against an associate, Prince worked in collaboration with an SM, ASM, or HR manager. Prince prepared numerous Notes and Notices with an ASM. Prince, however, testifies that he only reported his observations while preparing Notes and Notices,

---

[4] The parties dispute whether Prince alone delegated the tasks from the work lists or whether he did so at the direction of the ASM. *See* Pl.'s Ex. 1, Prince Dep. 185:11–187:14, ECF No. 46.

and the ASM made the determination of how to proceed based on Prince's observations. Prince also stated he did not decide whether or how to discipline an associate. That decision was always left to the ASM. THD disputes Prince's characterization of his inability discipline associates and argues Prince himself made disciplinary decisions that were merely reviewed and approved by an ASM.

To reward associates, THD uses an associate recognition program, "The Homer Award Program." Associates receive "Homer Awards," which are cash incentives up to $100, for excellent performance. Associates also become eligible for small corporate gifts such as watches, tablets, and luggage sets. Although Prince had the ability to reward associates with Homer Awards, other associates also had the ability to recommend another associate for these awards.[5] *See* Def.'s Ex. 7, Thompson Dep. 15:9–11.

After Prince was terminated on May 15, 2019, he filed a one-count Complaint in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, against THD for wrongful discharge in violation of the Virgin Islands Wrongful Discharge Act, 23 V.I.C. §§ 76–79. On October 16, 2019, THD removed the case to this Court.

After brief discovery, THD filed the instant motion for summary judgment. THD argues it is entitled to judgment because Prince served as a supervisor as defined by the NLRA, and because the NLRA preempts the WDA as applied to supervisors, Prince's claim is preempted. Prince opposes the motion and contends he was not a supervisor under the NLRA and even if he were a supervisor, the NLRA does not preempt the WDA. The Court held a telephonic oral argument on the motion on October 27, 2020.

---

[5] There is a dispute as to whether Prince needed the approval of a member of management to issue a Homer Award. *See* Pl.'s Ex. 6, Prince Decl. ¶ 16; Thompson Dep. 15:14–16:2.

## DISCUSSION

The Court will deny THD's motion because there is a dispute of material fact as to whether Prince was a supervisor as defined by the NLRA. Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment if "there is no genuine issue as to any material fact that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court must "view all facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). If, viewing the facts in this light, a reasonable jury could find for a nonmovant, then summary judgment must be denied. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014).

First, the Court recognizes the NLRA preempts the WDA as applied to supervisors. The WDA provides a cause of action for "any employee discharged for reasons other than those stated in subsection (a) of this section." V.I. Wrongful Discharge Act, 23 V.I.C. §§ 76–79. Subsection (a) then provides nine permissible statutory grounds for discharge, which can only be modified or expanded by "union contract." *Id*. This provision has been broadly interpreted to apply to all employees in the Virgin Islands. *See St. Thomas-St. John Hotel & Tourism Ass'n. Inc. v. Gov't of U.S. Virgin Islands ex rel. Virgin Islands Dep't of Labor*, 45 V.I. 701, 703 n.1 (3d Cir. 2004).

As applied to supervisors, however, the "union contract" opt-out provision conflicts with federal law. *See St. Thomas-St. John Hotel & Tourism Ass'n. v. Gov't of V.I.*, 357 F.3d 297, 302 (3d Cir. 2004). Specifically, Section 14(a) of the National Labor Relations Act provides that "no employer . . . shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." 29 U.S.C.

§ 164(a). The Supreme Court recognized that the legislative intent in enacting Section 14(a) "was to relieve employers from any compulsion under the Act and under State law to countenance or bargain with any union of supervisory employees." *St. Thomas-St. John Hotel & Tourism Ass'n.*, 357 F.3d at 302 (quoting *Beasley v. Food Fair of N.C.*, 416 U.S. 653, 657 (1974)). By pressuring employers to bargain with a supervisor as an employee in order to modify the WDA's grounds of termination, the WDA conflicts with the NLRA. *See id.* at 303–04. For that reason, the Third Circuit held the NLRA preempts the WDA in its application to supervisors, as defined by Section 2(11) of the NLRA. *See id.* According to this precedent, Prince's claim will be preempted by the NLRA only if he acted as a supervisor while employed at THD.[6] This preemption issue, and THD's motion, is thus dependent upon a finding that Prince was a supervisor as defined by the NLRA.

On the issue of whether Prince was a supervisor as defined by section 2(11) of the NLRA, there is a dispute as to his role at THD.[7] Section 2(11) defines a supervisor as:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

---

[6] Although Prince argues preemption of the WDA does not apply to nonunionized supervisors, the Court is unpersuaded. The Third Circuit's holding in *St. Thomas St. John Hotel & Tourism Ass'n* does not distinguish between supervisors who are part of a union and those who are not. *See* 357 F.3d at 303. If the supervisor is not in a union, although he could not collectively bargain for any modifications to the WDA as a supervisor, he could as an employee. This result is problematic because it undermines the NLRA's purpose of relieving any pressure on the employer to "accord to the front line of management the anomalous status of employees." *Id.* (quoting *Beasley*, 416 U.S. at 662).

[7] Prince argues the Court should not follow the Third Circuit's application of the NLRA's definition of supervisor and instead adopt a narrower definition from the Title VII context. Because the Third Circuit's application is binding authority here, the Court will apply the NLRA's definition of supervisor.

29 U.S.C. § 152(11). To determine whether an employee is a supervisor, the Third Circuit uses a three-part test. Employees are supervisors if: "(1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of authority is not of a merely routine or clerical nature, but requires the independent use of judgment, and (3) their authority is held in the interest of the employer." *Mars Home for Youth v. N.L.R.B.*, 666 F.3d 850, 853–54 (3d Cir. 2011) (citation omitted). A supervisor exercises independent judgment when he or she acts or recommends action "free of the control of others and form[s] an opinion or evaluation by discerning and comparing data." *Id.* at 854 (quoting *In re Oakwood Healthcare, Inc.*, 348 NLRB 686, 692–93 (2006)). As the party asserting Prince was a supervisor, THD bears the burden of proof. *See N.L.R.B. v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 711 (2001) ("The burden of proving the applicability of the supervisory exception . . . thus fall[s] on the party asserting it.").

THD contends Prince had the authority to assign, responsibly direct, reward, and discipline associates. The record, however, shows there is a dispute as to whether Prince had the requisite authority to do any of those supervisory functions and whether he used independent judgment. Because a dispute exists as to the first and second elements of the Third Circuit test for supervisor status, the Court need not consider the third element—whether the Prince's authority was held in the interest of the employer. The Court will thus deny THD's motion for summary judgment.

There is a factual dispute as to whether Prince had the authority to assign work to other associates and whether he used independent judgment in the exercise thereof. The authority to assign work refers to "the act of designating an employee to a place . . . appointing an employee to a time . . . or giving significant overall duties . . . to an employee." *Mars Home for Youth*, 666 F.3d at 855 (quoting *In re Oakwood Healthcare, Inc.*, 348 NLRB 686, 689 (2006)). A supervisor

must do more than simply instruct an employee to perform a discrete task; he must have the power to require these duties to be undertaken. *See id*.

Here, there is evidence Prince assigned work to other associates; however, viewing the evidence in the light most favorable to him, a jury could find he did not have authority to assign because he did not give "significant overall duties" to associates. With regard to "designating an employee to a place" or "appointing an employee to a time," there is no evidence Prince had the authority to determine work shifts or placements. The relevant consideration therefore is whether Prince assigned "significant overall duties" in assigning tasks from THD's work lists.

The record regarding the process by which work lists were generated could lead a jury to find Prince did not assign significant overall duties. In creating a work list, Prince walked through the department and identified deficiencies requiring corrective action, including tasks such as adjusting merchandise and maintenance work. The discrete and ad hoc nature of these tasks supports finding Prince did not assign "significant overall duties" as required to be deemed a supervisor. *See Mars Home for Youth*, 666 F.3d at 855 (upholding Board's interpretation that ad hoc tasks in response to crisis or daily assignments did not evidence authority to assign under the NLRA). Because the worklist assignments can be viewed as ad hoc and discrete tasks, a jury could find Prince did not have the authority to assign significant overall duties to associates.

Even if Prince did assign significant overall duties, the close involvement of management in allocating the tasks from the work lists could lead a jury to find that Prince did not exercise independent judgment in this function. Prince testified he delegated tasks to associates "with the opinion of [his] ASM" and in the event an associate did not complete a task, he followed up with the ASM, who could take disciplinary action. *See* Prince Dep. at 185:11–187:14. Because the authority to assign work must be used "free of the control of others," the ASM's predominant role

of delegating tasks and following up with associates on the tasks of the work lists supports a finding that Prince did not exercise independent judgment. *See Mars Home for Youth*, 666 F.3d at 854–55 (stating that review and approval by a superior of the putative supervisor's work did not establish the exercise of independent judgment); *see also Nat'l Labor Relations Bd. v. Sub Acute Rehab. Ctr. at Kearny, LLC*, 675 F. App'x 173, 177 (3d Cir. 2017) ("Judgment is not independent, however, if it is dictated or controlled by detailed instructions, whether set forth in company policies or rules, *the verbal instructions of a higher authority*, or in the provisions of a collective bargaining agreement." (emphasis added)). Should a jury believe Prince's testimony regarding the ASM's involvement in the work lists and assignments to associates, it could find Prince lacked the independent judgment to assign work as necessary for supervisory status under the NLRA.

As for whether Prince had the authority to responsibly direct other associates, there is a genuine issue of material fact on this issue as well. For direction to be responsible, "the person directing and performing the oversight of the employee must be accountable for the performance of the task by the other, such that some adverse consequence may befall the one providing the oversight if the tasks performed by the employee are not performed properly." *Mars Home for Youth*, 666 F.3d at 854 (citation omitted). The putative supervisor must be at risk of suffering adverse consequences for the actual performance of others, not his own performance in overseeing others." *Id.* (citation omitted).

The record shows Prince's leadership skills left much to be desired. He received subpar performance reviews as well as several Notices and Notes reporting deficient performance. *See, e.g.*, Def.'s Ex. F, Walters Dep. 18:24–21:3. Upon review of the Notices and Notes against Prince, a reasonable jury could find Prince was disciplined because he failed as a leader in his role as Department Head. For example, in an April 3, 2018, Notice, an ASM conducted a routine

walkthrough of the department and noticed several deficiencies that he had previously given instructions for Prince to correct. *See* Def.'s Ex. F. While Prince worked with a core team of associates in his department in addressing these deficiencies, this Notice as well as similar Notices may be construed as disciplinary action for Prince's failings in overseeing others, rather than as direct consequences of associate underperformance. Viewing the facts in the light most favorable to Prince, a genuine issue of material fact exists as to whether he had the authority to responsibly direct associates. *See Mars Home for Youth,* 666 F.3d at 854 (affirming Board's finding that putative supervisors did not responsibly direct others because there was evidence they were disciplined for "their own failings as managers").

There is also a genuine dispute as to whether Prince had the authority to reward and whether he exercised that authority with independent judgment. THD argues Prince's authority to issue Homer Awards and his role in performance reviews and associate ratings at talent meetings show he was a supervisor. The Court disagrees.

First, the record shows that all associates have the ability to recommend a Homer Award be awarded to another; a dispute exists, however, as to whether Prince could, as a Department Head, authorize the issuance of a Homer Award without the approval of an ASM or SM. *See* Prince Decl. 53 ¶ 16. Absent such authorization, THD's Homer Award program does not confer upon Prince any authority that is not also held by any other associate. Also, the maximum amount a recipient of a Homer Award could receive was $100, or some other gift of similar value. The de minimis amount of these awards and the dispute as to whether Prince needed a superior's approval raises a genuine dispute as to whether Prince had the authority to reward or recommend such action and if so, whether he exercised independent judgment.

Second, Prince's performance reviews and associate ratings do not show he rewarded others. An ASM, SM, or HR manager reviewed the performance evaluation or rating Prince provided for an associate. Should a jury believe Prince's testimony that his ratings and reviews were routinely rejected by his superiors, and the unclear impact on decisions regarding wage increases or other forms of merit recognition, it would support a finding that Prince did not effectively recommend rewarding associates. *Cf. Pine Manor Nursing Ctr.*, 270 NLRB 1008, 1009 (1984) (describing how the accumulation of 10 "stars" resulted in a 10-cent increase in hourly wage); *Bayou Manor Health Ctr.*, 311 NLRB 955, 955 (1993) (finding a direct correlation between evaluations and merit increases or departmental bonuses). A positive performance review of an associate may be nothing more than that—a positive performance review. The record shows that the positive performance reviews did not necessarily lead to an associate being rewarded. Viewing the facts in the light most favorable to Prince, a reasonable jury could find Prince did not reward or effectively recommend rewarding associate behavior by issuing Homer Awards or measuring associate performance.

Finally, a genuine issue of material fact exists as to whether Prince had the authority to discipline and whether he effectively recommended discipline with independent judgment. An employee exercises disciplinary authority if "(1) the employee has the discretion to take different actions, including verbally counseling the misbehaving employee or taking more formal action; (2) the employee's actions 'initiate' the disciplinary process; and (3) the employee's action functions like discipline because it increases severity of the consequences of a future rule violation." *Nat'l Labor Relations Bd. v. New Vista Nursing & Rehab.*, 870 F.3d 113, 132 (3d Cir. 2017) (citations omitted).

In *N.L.R.B. v. Attleboro Associates, Ltd*., the Third Circuit held that charge nurses exercised disciplinary authority by their decisions to either counsel another nurse directly or formally document the nurse's misconduct. *See* 176 F.3d 154, 165 (3d Cir. 1999). In *Attleboro*, if a charge nurse decided to write up a nurse, the write up became a part of the nurse's permanent file and could lead to termination. *See id*. By issuing such write-ups, charge nurses initiated a disciplinary process that could result in more severe consequences in the event of future write-ups. *See id*. The fact that the decision to write up a nurse may be subject to a superior's investigation did not preclude the court from finding that the charge nurse recommended discipline. *See id*. Without this authority to write up a nurse, however, *Attleboro* suggests that an employee falls short of exercising supervisory authority. *See id*. (distinguishing its decision from an Eighth Circuit case that denied a finding of supervisory status on basis that charge nurse only had power to verbally reprimand other nurses) (citing *Beverly Enterprises v. N.L.R.B.*, 148 F.3d 1042, 1046 (8th Cir. 1998)).

THD's Standards of Performance are instructive. Only managers may initiate or escalate the disciplinary process by issuing Notices. Although Notices can be prepared by a Department Head like Prince, they are signed off by an ASM or SM. In preparing Notices, Prince also testified he only documented his observations, while the ASM made the disciplinary recommendations and proposed plan of improvement. *See* Prince Dep. at 276:21–277:3.

Pursuant to *Attleboro,* when faced with an associate's misconduct, if Prince could choose either to counsel, or write the associate up, then he would have exercised or effectively recommended discipline. Prince, however, testified that he did not have this choice available to him. His testimony states he could only document the objective facts of an associate's performance and report those facts to the ASM. *See id.* at 117:17–120:10. He also testified that he needed the approval of an ASM before he could submit any documentation of an associate's performance or

misconduct. This prior approval extended not only to the submission of Notices but to Notes as well. *See* Prince Dep. 276: 21–277:3 ("I don't know if it's on paper required. But it has always been preached to us that before you do anything; before you place any notes; before you take any step; confirm with your ASM."). This testimony is sufficient to allow a reasonable jury to find Prince did not have the authority to effectively recommend discipline or to do so with independent judgment. *See Gumbs-Heyliger v. CMW & Assocs. Corp.*, No. 2012-078, 2014 WL 3360152, at *4 (D.V.I. July 9, 2014) (finding dispute as to employee's disciplinary authority because some testimony indicated the employee only alerted other managers regarding infractions and could lead a jury to find the employee lacked authority to decide whether discipline was appropriate); *Santiago v. United Corp.*, No. 05-739, 2020 WL 8212978, at *6 (V.I. Super. Ct. Dec. 28, 2020) (concluding employee was not a supervisor and noting disciplinary authority was limited to "confer[ring] with [an] office employee . . . to review the rules and type of the warning required, then take that proposed warning to [a superior] for approval").

Although THD argues *Attleboro* is controlling on this issue, that case does not warrant a different conclusion. *Attleboro* involved the finding that charge nurses exercised or recommended disciplinary authority because in response to another nurse's misconduct they used the independent judgment to either do nothing, issue a verbal counseling, or complete a write-up. *See* 176 F.3d at 164–65. *Attleboro* is distinguishable because Prince testified that he did not have the independent authority to take any action other than to make an objective clerical report of another employee's conduct to an ASM. Whatever happened after he made this initial report, he testified, was entirely at the discretion of the ASM. The charge nurses in *Attleboro* had the *choice* to write up other nurses for misconduct, whereas here, the record supports a finding that Prince did not have any authority to engage in any disciplinary action absent prior approval from management to submit

documentation of others' performance.[8] Because a reasonable jury could find that Prince's reports to the ASM regarding associate underperformance did not require the independent use of judgment, a genuine dispute exists as to whether Prince had the authority to engage in this supervisory function. *See Charles v. CBI Acquisitions, LLC*, No. 15-279, 2018 WL 4095605, at *7 (V.I. Super. Ct. Aug. 21, 2018) (finding defendant failed to prove putative supervisor used independent judgment in reporting others' subpar performance because report "was dictated by [the employer's] policy and procedure" and denying summary judgment).

In sum, the record supports a finding that Prince did not engage in, with the necessary independent judgment, any supervisory function listed in § 2(11) of the NLRA and proffered by THD. As a result, there is a genuine dispute of material fact as to whether Prince was a supervisor while employed with THD. Because THD's preemption claim is dependent on a finding that Prince was a supervisor, the Court will deny its motion.

**CONCLUSION**

The issue of whether Prince's WDA claim is preempted by the NLRA is dependent upon a finding that he acted as a supervisor while employed with THD. Because a reasonable jury could find Prince was not a supervisor as defined by § 2(11) of the NLRA, the Court must deny THD's motion for summary judgment.

An appropriate order follows.

---

[8] THD also contends Prince testified he could take action without ASM approval in the event of a safety violation or altercation. *See* Def.'s Mot. for Summ. J. 12. Regardless of this admission, the sporadic exercise of supervisory authority is insufficient to transform an employee into a supervisor. *See In Re Oakwood Healthcare, Inc.*, 348 NLRB 686, 694 (2006) (stating question is "whether the individual spends a regular and substantial portion of his/her work time performing supervisory functions").

BY THE COURT:


  /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.